**STATE ex GUTTER v HAWLEY et**

Common Pleas Court, Franklin Co

No 163674. Decided Jan 2, 1942

Roy J. Stone, Columbus, for plaintiff.

Thomas J. Herbert, Attorney General, Columbus. and John J. Walsh, Asst. Atty. General, Columbus, for defendants.

**594**

By REYNOLDS, J.

In this action relator seeks a writ of mandamus compelling respondents to reinstate his liquor permit which he claims was wrongfully revoked by the said respondents.

The permit was revoked by the Board after hearing on the following charges:

"That on August 23, 1941, you did suffer or permit your agent or employee, a waitress, to sell and serve intoxicating liquor, to-wit, beer, to one Carl Pitts, said Carl Pitts then and there being in an intoxicated condition. Shortly thereafter police officers did enter your said place of business and did place said Carl Pitts under arrest on a charge of intoxication; and on August 25, 1941, the said Carl Pitts did enter a plea of guilty to the charge of intoxication and was fined the sum of $5.00 and costs.

"Further, the operation of your permit premises is not up to standard in that on inspection of your permit premises on Sept. 6, 1941, between the hours of 9:00 P. M. and midnight, waitresses were soliciting customers to purchase them drinks and also one of the waitresses carried a small coin bank, and begged customers for money. Further, one of your customers did accuse said waitress of taking some of his change and placing it in her bank; that as a result of such accusation, your bartender ejected the customer and threatened to kill him; during said argument a glass was thrown which did cut another customer, all contrary to the Ohio Liquor Control Act and the regulations of the Ohio Board of Liquor Control."

If there were grounds for the Board's action, the Court is of course powerless to interfere. The court can only act, where the Board has exceeded its authority or abused its discretion.

Sec. 6064-22 GC provides that no sales of intoxicating liquor shall be made to an intoxicated person, and §6064-25 GC provides as follows:

"The board of liquor control may suspend or revoke any permit issued pursuant to the liquor control act for the violation of any of the applicable restrictions of this act or of any lawful rule or regulation of the board or other sufficient cause:

1. In case of conviction of the holder or his agent or employee for violating any of the penal provisions of this act or for a felony.

2. For making any false material statement in an application for a permit.

3. For assigning, transferring or pledging a permit contrary to the rules and regulations of the board of liquor control adopted pursuant to this act.

4. For selling or promising to sell beer or intoxicating liquor to a wholesale or retail dealer who is not the holder of a proper permit at the time of the sale or promise.

5. For failure or default of the holder of a permit to pay an excise tax or any part thereof together with any penalties imposed, by or under the provisions of the law relating thereto and for violation of any rule or regulation of the Tax Commission of Ohio, in pursuance thereof."

From the above it appears that the Board may suspend or revoke a permit for any violation of the applicable restrictions of the act, or of any lawful rule or regulation of the Board, or for any one of the five causes above set out, since the term "other sufficient cause" can relate only to those five causes enumerated in the statute following the colon appearing immediately after the words **"other sufficient cause"**.

This is the only reasonable construction to be placed on the statute in view of its terms and the punctuation used. The maxim "expressio unius est exclusio alterius" clearly applies here.

There is no statutory inhibition against employees of a permit holder

from soliciting customers to purchase drinks for them or asking customers for money, so that unless the rules and regulations properly adopted and promulgated by the Board contain such inhibition, then such conduct can not form the predicate for the revocation of a permit.

There is nothing in the record that any such rule or rules were in effect at the time in question, and the Court has looked in vain through the briefs for any claim that such rule existed. The conclusion is, there- ▆▆▆▆▆ fore, that it did not, so that such conduct on the part of employees is not ground for the revocation of a permit.

There is a further charge in the second paragraph of the accusation, that a customer was ejected, and threatened with death because he protested that a waitress had taken some of his change, and that as a result of the argument ensuing, a glass was thrown injuring another customer. The uncontradicted evidence is that the ejectment and threat were not the result of the customer's accusation against the waitress, but as a result of his own insults directed to the bartender, and that the customer was the one guilty of throwing the glass resulting in injury to another customer. That he was the one most at fault is further evidenced by the subsequent action of the injured party, who at once set out to pursue him, and on his return expressed regret that he had not been able to overtake him.

This leaves, then, the question of a sale to an intoxicated person, which is, of course, sufficient cause for the revocation of a permit, but ▆▆▆▆▆ in order to find that there has been a violation of this statutory restriction, it must not only be found that a sale had been made to an intoxicated person, but that the person making the sale knew at the time of making the sale, that the purchaser was in fact intoxicated.

See **Crabtree v State, 30 Oh St 382.**

What evidence in the record indicates any knowledge on the part of the agent selling liquor to an intoxicated person? Alex Hunter, a liquor inspector, testified that a waitress in relator's business served two glasses of beer to one Charles G. Pitts, at about 10:45 on Aug. 23, 1941, and that Pitts took the two glasses of beer and staggered across the floor, spilling part of the beer, and that he and his partner then sat in a booth and consumed part of the beer, and that about fifteen minutes later the same Pitts walked out of the front door and immediately returned in the custody of two police officers and was later taken to the police station, and on Aug. 25th entered a plea of guilty to being drunk. Ray Borway, another inspector who accompanied Hunter, testified that they went to relator's place of business about 10:30 P. M., Aug. 23rd, and sat in a booth and bought some drinks, and while there observed two police officers come into the place and walk on out. He apparently saw nothing which prompted him to think that any sale of intoxicating liquor was made to an intoxicated person, although he remained right there with Hunter and left when he did.

Sherman Witt, a police officer testified that he visted the place in question about 10:30 on August 23, and that when he arrived a man, later identified as Pitts, was doing a silly dance, and holding a glass of beer, and that he ordered him to sit down; that after remaining in the place five or ten minutes he went out and returned in a short time and saw Pitts walk from the bar to a booth, carrying two glasses of beer; that his companion was sitting at the booth, and that the police officer went right on through the place and outside. Shortly afterwards Pitts came out, staggering and the officer then arrested him.

It is quite evident that at the time the officer saw the man carrying the beer from the bar to his booth he did not consider him intoxicated, otherwise it would have been his duty to make an arrest right there. If the officer whose duty it was to observe such things was not impressed with the

596

fact that here was an intoxicated man evidently preparing to take more intoxicating liquor on board, what fact or facts would have brought the knowledge of intoxication to the notice of the waitress or bartender who made the sale? There is no claim that any of the officers made any protest or called the attention of the employees that one of their customers was intoxicated, and the conclusion to be reached from the record is that if he was intoxicated when he went out and was arrested, it was the result of the last glass of beer that he purchased. There is not a scintilla of evidence to show knowledge of the seller, of the purchaser's being intoxicated at the time of the sale.

The Court, therefore, concludes that the Board was without authority to revoke relator's permit, because of the conduct of the waitresses with respect to soliciting drinks, because not violative of rule or statute, and that there was no evidence of any knowledge of intoxication in connection with a sale to Pitts and that the Board, therefore, abused its discretion in revoking relator's permit.

It is, therefore, ordered that a writ issue as prayed for in the petition.